O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| GARY G. YOUNG,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>3.1 PHILLIP LIM, LLC, 3.1 PHILLIP LIM CA, INC., 3.1 PHILLIP LIM RETAIL, LLC, BARNEYS NEW YORK, INC., GOOP, INC., NORDSTROM, INC., SAKS FIFTH AVENUE, LLC,<br><br>　　Defendants. | **Case No.: SA CV 16-1556-DOC (KESx)**<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [18]** |

Before the Court is Gary G. Young's ("Young" or "Plaintiff") Motion for Preliminary Injunction ("Motion") (Dkt. 18). After consideration of the parties' aruguments, the Court DENIES the Motion.

## I.   BACKGROUND

This is a trademark case arising out of 3.1 Phillip Lim, LLC, 3.1 Phillip Lim CA, Inc.; 3.1 Phillip Lim Retail, LLC; Barneys New York, Inc.; Goop, Inc.; Nordstrom, Inc.; and Saks Fifth Avenue, LLC's, alleged infringements of Plaintiff's mark. Compl. ¶ 27. Plaintiff is the longstanding owner of a trademark in the word "Martini" for use in connection with "sunglasses and spectacles; watches and jewelry; handbags, pursues and wallets; luggage; baseball caps; bathing suits; bikinis; hats; shirts; and shoes." Mot. at 7; Req. for Judicial Notice Ex. B (Trademark Registration). The United States Patent and Trademark Office ("USPTO") has awarded Plaintiff's mark "incontestable" status. *See* Req. for Judicial Notice Ex. A–D. The shoes Plaintiff sells are sneakers and sandals. Mot. at 8. Defendants use the Martini mark in association with high-priced women's high-heeled shoes. *Id.*; Mot. at 12. Defendants use the Martini mark on the labels and advertisements for their shoes, but do not print "Martini" on the shoes themselves. Reply at 4. Defendants claim these shoes sell for as much as $575.[1] Opp'n at 2. They are sold in Nordstrom and Saks stores. Opp'n at 2; Mot. at 24. However, Plaintiff contends that Defendants' shoes can often be found at discount stores like Nordstrom Rack and on eBay.com. Mot. at 24.

Defendant 3.1 Phillip Lim ("Lim") attempted to register the word Martini, as used on high-heeled shoes, as a trademark with the USPTO in June of 2015. Mot. at 12; Opp'n at 4. The USPTO denied its application for a trademark because Plaintiff already owned a trademark in the word Martini. Mot. at 13; Opp'n at 4;  Decl. of Marc Reiner Ex. B (Dkt. 35-2). The USPTO informed Lim that its proposed mark was confusingly similar to the mark owned by Plaintiff. Opp'n at 5; Mot. at 14. After the USPTO informed Lim of the similarity of his proposed mark with Plaintiff's mark, Lim continued to use the Martini mark to sell his shoes. Mot. at 12.

---

[1] Plaintiff offered evidence that the shoes can found for as little as $95 on eBay. Reply at 4. The Court finds this price discrepancy immaterial to its analysis.

## II.     PROCEDURAL HISTORY

Plaintiff filed suit on August 23, 2016 (Dkt. 1) and filed a Motion for Preliminary Injunction ("Motion") on October 6, 2016 to enjoin Defendants from selling products under the Martini mark. Defendants filed an Opposition to the Motion on October 24, 2016 (Dkt. 35). Plaintiff replied on October 31, 2016 (Dkt. 41).

## III.    LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In order to succeed on his Motion, Plaintiff must establish that: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) the requested injunction is in the public interest. *Id.* at 20; *see also Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotations marks omitted). In deciding whether to exercise its sound discretion to award an injunction, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

## IV.    DISCUSSION

### A. Likelihood of Success on the Merits

To establish a trademark infringement claim under 15 U.S.C. §1114, Plaintiff must establish that Defendants are using a mark confusingly similar to a valid, protectable trademark *Brookfield Commun., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). In determining whether a competing mark is confusingly similar, courts in the Ninth Circuit look to the following eight factors, often referred to as the *Sleekcraft* factors: (1) the similarity of the conflicting marks; (2) relatedness or proximity of the two companies' products or services; (3) strength of Plaintiff's mark; (4) marketing channels used; (5) degree of care likely to be exercised by purchasers in selecting goods; (6) Defendants' intent in selecting its mark; (7)

1  evidence of actual confusion; and (8) likelihood of expansion in product lines. *Id.* at 1053–54;
2  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other*
3  *grounds by Mattel, Inc. v. Walking Mt. Productions*, 353 F.3d 792 (9th Cir. 2003).
4        Plaintiff's mark is valid and protectable. Plaintiff has filed with his Motion documents
5  showing that his mark is registered with the USPTO. Req. for Judicial Notice Ex. B (Trademark
6  Registration). Defendants do not dispute that the registrations are valid and instead focus their
7  arguments on whether there is a likelihood of confusion under the *Sleekcraft* factors. Opp'n at
8  12–20.

### 1. Similarity of the Marks

Both parties use the identical word mark—Martini. Therefore, this factor weighs in favor of finding a likelihood of confusion.

### 2. Proximity of the Goods

Plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012); *see Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008) (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:2 (4th ed.)) (holding that "[o]ccasionally, a modern court will fall into the error of thinking that there must be competition between the parties for trademark infringement to occur"). Indeed, the Court cannot find that the parties are direct competitors given the dearth of evidence of actual confusion or diverted sales. Regardless of whether the parties compete directly, goods that are in close proximity are those "which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Rearden LLC.*, 683 F.3d at 1212 (quoting *Sleekcraft Boats*, 599 F.2d at 348).

The parties dispute the extent of Plaintiff's shoe business, but the Court finds this to be irrelevant. Even if Plaintiff sells only sunglasses and no shoes, the Trademark Appeals Board has found that a consumer can be confused when faced with two different types of apparel bearing the same mark. *See Cambridge Rubber Co. v. Cluett, Peabody & Co.*, 286 F.2d 623, 624 (C.C.P.A. 1961) (women's boots related to men's and boys' underwear); *Jockey Int'l, Inc.*

*v. Mallory & Church Corp.*, 25 USPQ2d 1233, 1236 (TTAB 1992) (underwear related to neckties); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991) (women's pants, blouses, shorts and jackets related to women's shoes); *In re Pix of Am., Inc.*, 225 USPQ 691, 691-92 (TTAB 1985) (women's shoes related to outer shirts); *In re Mercedes Slacks, Ltd.*, 213 USPQ 397, 398-99 (TTAB 1982) (hosiery related to trousers); *In re Cook United, Inc.*, 185 USPQ 444, 445 (TTAB 1975) (men's suits, coats, and trousers related to ladies' pantyhose and hosiery). The Court finds these decisions persuasive and holds that a jury would likely find that consumers would reasonably think that sunglasses and shoes with the same mark came from the same source. Therefore, this factor weighs in favor of finding a likelihood of confusion.

### 3. Strength of Plaintiff's Mark

For the third *Sleekcraft* factor, Defendants attack the commercial strength of Plaintiff's mark because of Plaintiff's limited advertising and sales. Opp'n at 13. Defendant relies on *Stonefire Grill, Inc. v. FGF Brands, Incorporated*, 987 F. Supp. 2d 1023, 1048 (C.D. Cal. 2013), for the proposition that in determining the strength of a mark, a court "examines the *commercial* strength of the trademark among [Lim]'s potential purchasers." *Id.* (emphasis added). However, the court in *Stonefire* held that there are two types of confusion: forward confusion and reverse confusion. *Id.* at 1049. The instant case is properly treated as a reverse confusion case. In a reverse confusion case, the Court intercedes to prevent a senior user from "being overwhelmed by a larger junior user who has saturated the market with publicity." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002). In analyzing reverse confusion, the Court evaluates "the *conceptual* strength of the senior user's (Plaintiff) mark and compare[s] it to the commercial strength of the junior user's (Defendants) mark." *Stonefire Grill, Inc.*, 987 F. Supp. 2d at 1049 (emphasis added).

Plaintiff has shown, and Defendants do not dispute, that the USPTO awarded Plaintiff's mark "incontestable" status. *See* Req. for Judicial Notice, Ex. A–D. Absent a showing that the mark is generic, an incontestable mark is considered to have a high conceptual strength. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985). Because Plaintiff's mark is incontestable, the Court finds that the mark is conceptually strong, satisfying the

reverse confusion strength of mark test. Thus, the third factor weighs in favor of finding a likelihood of confusion.

### 4. Marketing Channels Used

As to the fourth factor, Plaintiff states that he sells "online via Plaintiff's various websites and other third party online retail marketplaces, such as eBay, at retail stores, trunk shows and special events." Mot. at 7. Plaintiff admits that Defendants often sell their allegedly infringing shoes in higher-priced retail stores such as Nordstrom and Saks. *Id*. at 24. However, Plaintiff argues that Defendants' "shoes are often sold at dramatic discount (of 70% off) in tier 2 stores such as Nordstrom Rack and Saks Off Fifth." *Id.* Plaintiff also claims that Defendants' shoes and Plaintiff's shoes can be found placed "side-by-side via the eBay auction site." *Id.*; Anderson Decl. ¶ 9 (Dkt. 18-3). For this factor, "courts examine the proximity of the marketing channels to one another and whether direct competition exists." *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Defendants' claim that they sell their shoes for a higher price and to a different demographic. Opp'n at 2–3. However, Plaintiff's sunglasses sell for similar prices to Defendants' shoes and therefore there is no difference in the "socioeconomic customer group served" by the respective parties. *Nutri/System, Inc.*, 809 F.2d at 606.

However, Plaintiff has not shown any evidence that Defendants target the same group of consumers except through general online advertising. "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). Because general online advertising does not shed light on the likelihood of confusion the Court finds that this factor does not weigh in favor of finding a likelihood of confusion.

### 5. Degree of Care Exercised by Consumers

The Ninth Circuit found that customers may exercise a high degree of care for products that sell online for even "several hundred dollars." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 940 (9th Cir. 2015), *cert. denied,* 136 S. Ct. 1231 (2016). Plaintiff admits that

Defendants often sell their infringing shoes in higher-priced retail stores such as Nordstrom and Saks. Mot. at 24. However, Plaintiff argues that when Defendants' shoes are sold at dramatic discounts, consumers "may not exercise a high degree of care." *Id.* Though the parties dispute the exact selling price of Lim's shoes, the Court finds that they are priced within a range in which customers will exercise a higher degree of care. Therefore, the Court finds that this factor weighs against finding a likelihood of confusion.

### 6. Defendants' Intent in Selecting their Mark

A Defendant's ill intent is not required for a court to find infringement and is minimally important. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014). "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002). Defendants argue that Lim selected the Martini mark because of the shape of the shoe's heel. Opp'n at 19. Plaintiff has not disputed this fact. Given Plaintiff's limited market presence, the Court finds that Lim likely selected the mark in good faith. Therefore, this factor does not weigh in favor of finding a likelihood of confusion.

### 7. Evidence of Actual confusion

"Evidence of actual confusion is strong evidence that future confusion is likely." *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993). But, "the absence of such evidence is not dispositive." *Id.* Plaintiff has not shown any evidence of actual confusion, nor does Plaintiff argue that this factor weighs in favor of finding a likelihood of confusion. Mot. at 23. Therefore, the Court finds that this factor does not weigh in favor of finding a likelihood of confusion.

### 8. Likelihood of Expansion

"A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement." *Off. Airline Guides, Inc.* 6 F.3d at 1394. Plaintiff testified at oral arguments that his daughter was preparing to expand his brand into the high-heeled women's shoe market. The Court found Plaintiff's testimony on this point credible. Thus, this factor weighs in favor of a likelihood of confusion.

### 9. Conclusion

"Plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Pom Wonderful LLC*, 775 F.3d at 1125. Defendant Lim was previously told by the USPTO that its use of the Martini mark would likely cause confusion with the mark owned by Plaintiff. Decl. of Marc Reiner, Ex. B (Dkt. 35-2). The Court agrees with the USPTO and finds that on balance, the *Sleekcraft* factors weigh in favor of finding a likelihood of confusion. Because Defendants' use of the mark is likely to cause confusion, Plaintiff is likely to prevail on the merits of his claim. Thus, the first element of the *Winter* test is met.

### B. Irreparable Harm

On a motion for preliminary injunction, a plaintiff *must* show "that [he] will likely suffer irreparable harm if an injunction does not issue." *Pom Wonderful LLC v. Pur Beverages LLC*, Case No. 13-06917 MMM (CWx), 2015 WL 10433693, at *4 (C.D. Cal. Aug. 6, 2015) (citation omitted). "Gone are the days when once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Herb Reed Enters., LLC v. Florida Enter. Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013). Further, "the existence of intangible harms such as a loss of goodwill must be shown by evidence." *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, No. SACV 12-572 JVS (Ex), 2014 WL 1246497, at *2 (citation omitted).[2]

In his briefs, Plaintiff argued that Defendants' illicit use and expansion of the Martini trademark

> plainly dilutes the commercial strength of Plaintiff's MARTINI marks and significantly decreases their distinctiveness. Defendants' use is likely to irreparably confuse and deceive consumers into falsely associating a

---

[2] Plaintiff argues that "if the Court determines that there is a serious question on the merits, the balance of hardships then becomes the critical analysis." Mot. at 26. This is not the law. Cases that grant preliminary injunction "where the plaintiff shows *only* that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor . . . are superseded" by the Ninth Circuit's holding in *Wild Rockies*. 632 F.3d at 1135.

-8-

>connection between the products and services of Plaintiff and Defendants. Plaintiff has no control over the quality of Defendants' goods nor the manner of sale. Plaintiff's reputation is being put at risk by Phillip Lim and his affiliated companies and retailers.

Mot. at 25. Defendants pointed out that Plaintiff's argument is devoid of any reference to evidence. Opp'n at 7–8. In his Reply, Plaintiff responded by arguing that his Motion

>produced significant, if not overwhelming evidence of a high likelihood of success on the merits; past and ongoing harm and dilution to Plaintiff's trademark, a further likelihood of harm to Plaintiffs goodwill, and reputation, and past and ongoing increased costs and competition for advertising and sharp impact (particularly online) adversely affecting Plaintiff's established and ongoing business interests. Plaintiff has shown that this damage has been particularly acute and is growing exponentially just during the past 60 days while Defendants desperately attempted to off-load their products anywhere and at any price. Such harm cannot be cured by monetary damage.

Reply at 6–7.

At oral argument Plaintiff argued that the cost of his Google Ad-Words advertising has increased because of Defendants', and others', infringing conduct. This is reparable. If Defendants have caused an increase in advertising costs, Plaintiff can easily calculate how much additional money was spent on advertising and factor it into his damages at trial. Plaintiff must show *irreparable* harm, therefore the Court finds that the increased advertising expenses are not enough to satisfy the second element of the *Winter* test.

Plaintiff also testified that his shoes appear on the third page of Google's search results when searching for Martini Shoes because of Defendants' infringing conduct. Defendants submitted evidence showing that dozens of retailers, including Lim, who use the word "Martini" have "bumped" Plaintiff's shoes off the first page. Decl. of Deborah Gubernick Ex. C. Dkt. 35-3. Plaintiff has not shown any evidence that being bumped to the third page has

caused him harm. At oral argument Plaintiff stated that he was not aware how many users visited his website before Lim began advertising, nor did he know how many visited after. Further, Plaintiff did not present evidence or testimony regarding how many people searched the internet for his shoes before or after Defendants began using the Martini mark. Additionally, Plaintiff did not present evidence to show that if this injunction was granted, any of the supposed harms would be remedied. If Plaintiff were truly harmed, the Court would expect evidence showing a precipitous drop in visitors to Plaintiff's website, drops in sales, actual confusion, or any other evidence tending to show that Plaintiff lost goodwill or position in the market. On the face of the *evidence* submitted, it is not clear that Plaintiff had any goodwill or position in the market for shoes to begin with.[3] While Plaintiff has demonstrated that they have a position in the market for sunglasses, they have not argued that Defendants' infringing conduct has harmed them in this market.

While Plaintiff vehemently argues there is evidence of irreparable harm, Plaintiff has not pointed this evidence out to the Court. It is not enough for Plaintiff to offer "conclusory and speculative" allegations of harm. *See Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 Fed. Appx. 390, 391 (9th Cir. 2014).While preliminary relief may be ordered to prevent harm to a plaintiff's reputation and goodwill, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence." *Herb Reed*, 736 F.3d at 1250. That Plaintiff's "reputation *might* be harmed by the marketing of [Lim's] products did not establish that irreparable harm to [Plaintiff's] reputation is *likely*." *Titaness Light Shop, LLC*, 585 Fed. Appx. at 392 (emphasis original); *See also Gatsinaris v. ART Corporate Solutions, Inc.*, No. SACV 15-0741-DOC (DFMx), 2015 WL 3453454, at *8 (C.D. Cal. May 29, 2015) ("[C]ourts should be wary of granting a preliminary injunction based solely on allegations and conclusory affidavits submitted by plaintiff.") (quotation omitted); *San Miguel Pure Foods Co., Inc. v. Ramar Intern Corp.*, 625 Fed. Appx. 322, 327 (9th Cir. 2015)

---

[3] Defendants raised the argument that perhaps Plaintiff had artificially increased the price of the shoes he sells not to increase revenue, but to influence this suit. The Court cutoff this line of questioning by sustaining a relevance-based objection. However, upon further consideration, the Court finds that Defendants' argument may have merit, although the Court does not rely on this argument in coming to its decision on this motion.

1  (conclusory allegations that company "would effectively lose control" over its brand did not
2  demonstrate it *had* lost control over its brand").

3  Because there is no evidence that Plaintiff has been irreparably harmed, Plaintiff has not
4  met the second element of the *Winter* test.

### C. Balance of the Equities

As to the balance of the equities, Plaintiff's only argument is that he is "at risk of losing all of its meaningful trademark protection in the Martini trademarks." Mot. at 26. Plaintiff further contends that Defendants "do[] not face any real risk of any undue harm" if an injunction is issued. *Id.* The Court may weigh the loss of business in determining the balance of the equities. *Wahoo Intern., Inc. v. Phix Dr., Inc.*, 13CV1395-GPC BLM, 2014 WL 2106482, at *6 (S.D. Cal. May 20, 2014). Plaintiff has not shown any evidence that actual sales are being diverted from Plaintiff to Defendants. Thus, if the injunction is not granted, the harm to Plaintiff will be entirely speculative. If the Court grants the injunction, Defendants will have to stop using the Martini name in their marketing and relabel their products. Since the shoes are not emblazoned with the Martini mark, Lim could still sell them after relabeling. However, relabeling would delay sales. The Court is aware that this time of year is some of the most profitable for retailers and any delay could be costly. Therefore the harm to Defendants outweighs the harm to Plaintiff. Thus, the balance of the equities tips in favor of the Defendants. Therefore, Plaintiff has not met the third element of the *Winter* test.

### D. Public Interest in the Injunction

In the trademark context, the public interest in the injunction has been defined as "the right of the public not to be deceived or confused." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd,* 348 Fed. Appx. 288 (9th Cir. 2009) (unpublished). Because the Court finds that there is a likelihood of confusion between the source of goods bearing the Martini mark, the Court finds that there is a public interest in granting the injunction. Thus, Plaintiff has satisfied this element of the *Winter* test.

## V. DISPOSITION

Because Plaintiff failed to establish elements two and three of the *Winter* test, the Court DENIES the Motion.

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED: November 16, 2016